GERY R. GASICK, Plaintiff-Appellee, v. THE DUNLAP PUBLIC LIBRARY DISTRICT OF THE COUNTY OF PEORIA, Defendant-Appellant (Mary E. Harkrader, County Clerk of Peoria County, Defendant-Appellee).

Third District No. 3—87—0470

Opinion filed December 30, 1987.—Rehearing denied February 2, 1988.

Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (Phillip B. Lenzini, of counsel), for appellant.

Quinn, Johnston, Henderson & Pretorius, of Peoria (Mary Alexander Corrigan, of counsel), for appellee Gery R. Gasick.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, the Dunlap Public Library District of the County of Peoria (District), appeals from the judgment of the circuit court of Peoria County, which ordered an emergency referendum in order to permit the plaintiff, Gery Gasick, and other residents to vote for disconnection from the District of previously annexed property. Gasick contends that such a referendum is mandated by section 2—8 of the Illinois Public Library District Act (Ill. Rev. Stat. 1985, ch. 81, par. 1002—8) and section 2A—1.4 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.4).

On July 21, 1986, the District, pursuant to section 2—8(2), an-

nexed a portion of Medinah Township in Peoria County which included plaintiff's home. Section 2—8(2) states:

"Whenever a municipality or school district included entirely or partially within a district has annexed or otherwise includes within its boundaries territory contiguous to the district and without local tax supported public library service, the district may annex such territory by the passage of an ordinance to that effect, describing the territory annexed and reciting the prior annexation or other inclusion thereof by the municipality or school district. Within 15 days after the adoption of the ordinance it shall be published at least once in one or more newspapers published in the district and the territory being annexed, or if no newspaper is published therein, then in one or more newspapers with a general circulation within the district and the territory to be annexed. In a district and territory in which no newspaper is published, publication may instead be made by posting a notice in 3 prominent places within the district and the territory to be annexed. The publication or posting of the ordinance shall include a notice of (1) the specific number of voters required to sign a petition requesting that the question of the adoption of the ordinance be submitted to the voters of the district or the territory to be annexed or both; (2) the time in which the petition must be filed; and (3) the date of the prospective referendum. The district Secretary shall provide a petition form to any individual requesting one. If no petition is filed with the library district within 30 days after publication or posting of the ordinance, the annexation shall take effect. However, if within the 30 day period, a petition is filed with the Board of Trustees of the library district, signed by voters of the district or the territory to be annexed or both, equal in number to 10% or more of the total number of votes cast, respectively, in the district, the territory to be annexed or both at the last preceding general election, asking that the question of the annexation of the territory be submitted to the voters thereof, the Board of Trustees may vacate the annexation ordinance or certify the question to the proper election officials who shall submit the question at a regular election." Ill. Rev. Stat. 1985, ch. 81, par. 1002—8(2).

Because no petition had been filed objecting to the annexation within the 30-day statutory time period, no public question regarding the annexation was placed on the ballot for the November 4, 1986, general election. All parties agree that the annexation was valid and

no infirmity has been raised regarding the annexation procedure employed.

However, the statute also provides for a referendum for disconnection. The statute states:

"A referendum for disconnection may subsequently be held whenever territory is annexed by ordinance and without the submission of the question to a referendum as provided in this subsection (2). A referendum for disconnection of this annexed territory shall be held upon the filing of a petition, signed by not less than 100 of the voters or, in the case where there are 100 or fewer voters, then a majority thereof, residing within such annexed territory; provided that such referendum must be held within one year after the effective date of this amendatory Act of 1986 or one year after the date the territory was annexed, whichever date is later. However, such annexed territory shall not be disconnected if it would result in the district becoming noncontiguous. The petition shall be addressed to and filed with the Secretary of the district.

Upon the filing of such a petition, the district shall certify the question to the proper election officials, who shall submit the proposition of disconnection to the voters residing within the territory to be disconnected at an election held in accordance with the general election law." Ill. Rev. Stat., 1986 Supp., ch. 81, par. 1002—8(2).

To comply with the disconnection statute, the question would have to have been submitted to the voters prior to September 12, 1987—one year from the effective date of the amendatory act. Therefore, in accord with section 2A—1.1 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.1), the question could have been presented to the voters at either the November 4, 1986, general election, or the April 7, 1987, consolidated election. In this case, it was not until May 22, 1987, that the secretary of the District received a petition for a referendum for disconnection.

The plaintiff then attempted to utilize section 2A—1.4, the emergency referenda provision, of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.4), which provides for elections on dates other than those established by section 2A—1.1. Section 2A—1.4 provides:

"Whenever any public question is to be submitted pursuant to law, whether by action of the governing body of a unit of local government or school district, by petition, or by court order, the governing body of the unit of local government or school district whose powers or duties are directly affected by the

result of the vote on the public question may petition the circuit court for an order declaring such proposition to be an emergency and fixing a date other than a regularly scheduled election date under Section 2A—1.1 on which a special referendum election shall be held for the submission of the public question.

\* \* \*

The petition must be approved by a majority of the members, elected or appointed, of the governing body.

The court shall conduct a hearing on the petition. Any resident of the area in which the referendum is to be conducted may oppose the petition.

The court may approve the petition for an emergency referendum only upon a finding, supported by the evidence, that the referendum is necessitated by an imminent need for approval of additional authority in order to maintain the operations or facilities of the unit of government or school district and that such need is due to circumstances beyond the control of the governing body." Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.4.

The board members of the District voted 0 to 7 on the motion to petition the court for an order for an emergency referendum. Notwithstanding the vote, the circuit court entered a *mandamus* order compelling the District to certify the question to the county clerk in order to submit the disconnection referendum at an election prior to September 12, 1987. The residents voted in favor of the disconnection on August 11, 1987.

Gasick relies on the mandatory language of section 2—8 of the Illinois Public Library District Act, which states that upon the filing of a petition for disconnection "the district *shall* certify the question to the proper election officials [who shall submit the proposition] at an election held in accordance with the general election law." (Ill. Rev. Stat., 1986 Supp., ch. 81, par. 1002—8.) He contends that this places a duty on the District to certify the question for submission to the voters. It must be noted, however, that even if the district certified the question, the election officials would still be bound by the dictates of the Election Code as to when such an election could be held. In this case, all possible dates upon which the question could be submitted to the voters had passed. The next available date, in November 1987, would be beyond the permissible time allowed by statute to seek disconnection.

■■■ Although Gasick contends otherwise, the emergency referenda provision is not applicable to this factual situation. When interpreting a statute, courts must give the language of the statute its

plain and ordinary meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102.) When that language is clear, it will be given effect without resorting to other aids of construction. (*People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174.) The clear import of this statute indicates action by a governmental unit. There is no provision for initiating proceedings for an emergency referendum by private persons. The statute makes it discretionary with the governing body to petition the court for the emergency referendum. But once the governing body decides to use the petitioning process, the statute also mandates that the petition be approved by a majority of the governing body. Then, and only then, is the circuit court in a position to approve the petition. Further, the court is required to make "a finding, supported by the evidence, that the referendum is necessitated by an imminent need for approval of additional authority in order to maintain the operations of the unit of government *** and that such need is due to circumstances beyond the control of the governing body." (Ill. Rev. Stat. 1985, ch. 46, par. 2A—1.4.) In this case, the District voted unanimously for nonapproval of the petition. Additionally, the circuit court made no finding in its *mandamus* order which would satisfy the statutory requirement.

For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed.

Reversed.

SCOTT and WOMBACHER, JJ., concur.